UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAIME RODRIGUEZ and ADELMA                    Case No
RODRIGUEZ,                                       .

                        Plaintiffs,

            -vs.-                              **COMPLAINT**

DITMAS MANAGEMENT CORP.,
SHP, LLC, and SANFORD SIRULNICK,

                        Defendants.
----------------------------------------------------------X

Plaintiffs, JAIME RODRIGUEZ ("Jaime") and ADELMA RODRIGUEZ ("Adelma")
(Jaime and Adelma are collectively referred to as the "Plaintiffs'"), by and through their
attorneys, the LAW OFFICES OF WILLIAM CAFARO, as and for their Complaint against
DITMAS MANAGEMENT CORP., ("Ditmas Management"), SHP, LLC ("SHP") and
SANFORD SIRULNICK ("Sirulnick") as Defendants, hereby respectfully allege as follows:

### NATURE OF CASE

1.      This is a civil action for damages based upon Defendants' flagrant and willful
violations of the rights guaranteed to Plaintiffs by: (i) the overtime provisions of the Fair
Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New
York Labor Law ("NYLL") § 160 and the corresponding N.Y. Comp. Codes R. & Regs
("NYCCRR"); (iii) the requirement that employers furnish employees with a wage notice at
the time of hiring containing specific categories of accurate information, NYLL § 195(1);
(iv) the requirement that employers furnish employees with wage statements on each payday
containing specific categories of information under the NYLL § 195(3); (v) breach of
contract under New York common law; and (vi) any other claim(s) that can be inferred from
the facts set forth herein.

2.      From the second week in March to December 1 each year, the Defendant Sirulnick makes use of an estate located at 377 Great Plains Road, Southampton NY 11968 (hereinafter the "Estate").  Plaintiffs worked for Defendants at the Estate between the second week in March and the beginning of December, between March 2014 until on or about September 1, 2019.   Throughout their employment, as described below, the Defendants required Plaintiffs to work not less than 68 and sometimes as much as 90 hours per week. However, Defendants failed to pay Plaintiffs at the overtime rate of pay of one and one-half times their regular rate of pay for each hour they worked per week in excess of forty (40), as the FLSA and the NYLL require.  Also, Defendants failed to provide Plaintiffs with wage notices containing the criteria enumerated under the NYLL with accurate and/or complete wage statements on each payday as the NYLL requires. Finally, Defendants breached a contract between the Defendants and the Plaintiffs to pay a sum certain on a bi-annual basis to Plaintiffs for life subject to certain conditions which have all been met.

### *JURISDICTION AND VENUE*

3.      Jurisdiction is based upon 28 U.S.C. § 1331, insofar as it involves a statute of the United States, specifically, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*.

4.      Plaintiffs rely upon 28 U.S.C. § 1367 to invoke supplemental jurisdiction with respect to the state law claims which form another basis for recovery upon the same factual nexus, specifically Articles 6 & 19 of the Labor Law, related New York State Department of Labor regulations and other appropriate rules, regulations, statutes, and ordinances as well as the New York common law for breach of contract.

5.      Alternatively, Plaintiffs allege jurisdiction is based upon 28 U.S.C. § 1332, insofar as it involves Defendants who are citizens of New York and Plaintiffs who are citizens of Florida for the purposes of diversity jurisdiction.

6.      The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

7.      Venue is based upon 28 U.S.C. § 1391(b)(1), insofar as at least one of the Defendants resides within this Judicial District, and (b)(2), insofar as a substantial part of the events giving rise to the within causes of action occurred in this Judicial District.


### *THE PARTIES*

8.      Plaintiff Jaime is an individual currently residing at 19791 Beverly Park Rd., Estero, FL 33928, which is within Lee County.

9.      Plaintiff Adelma is also an individual currently residing at 19791 Beverly Park Rd., Estero, FL 33928, which is within Lee County.

10.     Plaintiff Jaime is a citizen of the State of Florida for the purposes of diversity jurisdiction.

11.     Plaintiff Adelma is also a citizen of the State of Florida for the purposes of diversity jurisdiction.

12.     Defendant Ditmas Management was and is a domestic business corporation.

13.     Upon information and belief, Ditmas Management's principal place of business is located at 3333 New Hyde Park Road, Suite 411, New Hyde Park, NY 11042, within the County of Nassau.

14.     Ditmas Management is a citizen of the State of New York for the purposes of diversity jurisdiction.

15.     Defendant SHP was and is a domestic business corporation.

16.     Defendant SHP's principal place of business is located at 3333 New Hyde Park Road, Suite 411, New Hyde Park, NY 11042, within the County of Nassau.

17.     Defendant SHP is a citizen of the State of New York for purposes of diversity jurisdiction.

18.     Upon information and belief, Defendant Sirulnick is an individual whose actual residence address is 791 Park Avenue, New York, New York.

19.     Sirulnick is a citizen of the State of New York for the purposes of diversity jurisdiction.

20.     Upon information and belief, at all times herein pertinent, Defendant Sirulnick, served as a principal, officer and/or manager of Defendant Ditmas Management and of SHP.

21.     Upon information and belief, for the calendar year 2017 the gross receipts of Ditmas Management were not less than $500,000.00.

22.     Upon information and belief, for the calendar year 2018 the gross receipts of Ditmas Management were not less than $500,000.00.

23.     Upon information and belief, for the calendar year 2019 the gross receipts of Ditmas Management were not less than $500,000.00.

24.     Upon information and belief, for the calendar year 2017 the gross receipts of SHP were not less than $500,000.00.

25.     Upon information and belief, for the calendar year 2018 the gross receipts of SHP were not less than $500,000.00.

26.     Upon information and belief, for the calendar year 2019 the gross receipts of SHP were not less than $500,000.00.

27.     Prior to January 1, 2018, Sirulnick, together with his wife Jill Sirulnick, were the owners of a large estate located at 377 Great Plains Road, Southhampton, New York 11968, in the County of Suffolk (the "Estate").

28.     On January 1, 2018, the Estate was deeded into a family trust of which Sirulnick is the trustee.

29.     At all times herein pertinent, each Defendant was an "employer" within the meaning of the 29 U.S.C. § 203(d) and N.Y. Lab. Law § 190(3).

30.     At all times herein pertinent, defendant Sirulnick was acting on behalf of, and in the business interests of the defendant Ditmas Management.

31.     At all times herein pertinent, defendant Sirulnick was acting on behalf of, and in the business interests of the defendant SHP.

32.     At all times herein pertinent, Defendant Sirulnick had the power to hire and fire all of the employees who worked at the Estate.   Indeed, Defendant Sirulnick hired Plaintiffs.

33.     At all times herein pertinent, Defendant Sirulnick controlled the terms of the Plaintiffs' employment, insofar as Sirulnick would tell the Plaintiffs what tasks to complete, advise the Plaintiffs if any of the pertinent tasks had not been completed to his satisfaction, and advise Plaintiffs when they could have the day off.

34.     At all times herein pertinent, Defendants controlled Plaintiffs' work schedules.

35.     At all times herein pertinent, Defendant Sirulnick controlled the rates and methods of payment of each of the employees of Ditmas Management, including the Plaintiffs' pay rates and methods of pay.

36.     Defendant Sirulnick controlled the rates and methods of payment for each of the employees who worked at the Estate in general, and controlled the rates and methods of payment for each of the for each of the Plaintiffs in particular.

37.     Each of the Defendants were engaged in an industry having an affect on commerce within the meaning of 29 U.S.C. § 203.

38.     At all times herein pertinent, and in the course of their respective duties, Plaintiffs regularly handled products which had been moved in commerce including, but not limited to, various food items, a wide variety of cleaning products and various household supplies. Moreover, each Plaintiff was issued a credit card against which they were authorized to, and did, regularly make purchases of products which were utilized on the Estate in the ordinary course of their duties.

## *FACTUAL ALLEGATIONS*

39.     From on or about July 2008 until on or about September 1, 2019, Plaintiffs worked as live-in domestic workers for Defendants at the Estate every summer.

40.     For the purposes of this Complaint, "summer" refers to the time interval beginning approximately two weeks before Memorial Day and approximately one week after Labor Day.

41.     Plaintiff Jaime's numerous tasks and duties included, but were by no means limited to, buying groceries, washing and cleaning the cars, (including detailing Sirulnick's Porshe by hand, insuring that it was spotless down to the rims), checking all the mechanicals, checking all the plumbing fixtures for leaks, checking, cleaning and maintaining the pool on the days the pool maintenance company was not scheduled to come, preparing food and

cooking at barbeques, buying supplies for the Defendants, and checking on the work done by the numerous contractors who attended to various and sundry tasks and duties on the Estate.

42.     Plaintiff Adelma's numerous tasks and duties included, but were by no means limited to, cooking and serving food to Sirulnick, his family members and their guests, cleaning up after meals, preparing coffee and fruit in the afternoons when requested, acting as wait staff and attending guests at breakfast and lunch, (and at dinner when applicable), doing laundry to the extent it was not done by other staff, watering plants, cleaning the bedrooms, guest rooms, and bathrooms, preparing shopping lists for food and supplies needed at the Estate,  making numerous internet purchases for items needed at the Estate, performing various clerical tasks, and reporting the hours worked by other staff members at the Estate for payroll purposes.

43.     Approximately half the time, Defendants required Plaintiff Jaime to work – and he did in fact work - five days a week from approximately 6:00 AM until approximately 9:00PM – 11:00PM and one day per week from 9:00AM until 5:00PM.

44.     The other half of the time, Defendants required Plaintiff Jaime to work – and he did in fact work – four days a week from approximately 6:0AM until approximately 9:00PM – 11:00PM and two days per week from 9:00AM until 5PM.

45.     Approximately half the time, Defendants required Plaintiff Adelma to work – and she did in fact work - five days a week from approximately 6:00 AM until 9:00PM – 11:00PM and one day per week from 9:00AM until 5:00PM.

46.     The other half of the time, Defendants required Plaintiff Adelma to work – and she did in fact work - four days a week from approximately 6:0AM until approximately 9:00PM – 11:00PM and two days per week from 9:00AM until 5PM.

47.     The number of longer days, as opposed to shorter days, per week fluctuated as recited in the foregoing paragraphs depending upon whether Sirulnick and his family would spend either 4 or 5 days at the Estate during the particular week.

48.     The ending time of the longer work days referred to in the preceding paragraphs would fluctuate depending upon, *inter alia*, whether Sirulnick and his family had dinner or a dinner party at the estate, and/or whether or not a pool party had been held at the Estate on the particular day.

49.     At all times herein pertinent, Defendants paid each Plaintiff on a flat weekly salary basis, irrespective of the number of hours worked.

50.     At all times herein pertinent, Defendants paid Plaintiff Jaime $1,353.37 per week.

51.     At all times herein pertinent, Defendants paid Plaintiff Adelma $1,353.37 per week.

52.     The flat weekly salary above was intended to compensate each Plaintiff for only forty (40) hours of work per week.

53.     Each Plaintiff regularly worked for the Defendants in excess of forty (40) hours per week but neither of them received any overtime premium of one and one-half times their regular rate of pay for those hours.

54.     Additionally, Defendants paid Plaintiffs by check, on a weekly basis, without providing them with any wage statements that reflected the amount of hours that they worked, their regular rate of pay, or their overtime rate of pay for each hour they worked in excess of forty (40) hours in a given workweek.

55.     Finally, Defendants intentionally did not provide Plaintiffs with a wage notice at the time of their hire, or at any time thereafter, containing any of the following

information: their rates of pay and basis thereof; specifying whether Plaintiffs were paid by the hour, shift, day, week, salary, piece, commission, or other basis; whether any allowances were claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular payday designated by Defendants; the name and physical addresses of Defendants; any "doing business as" names used by Defendants; and/or Defendants' mailing addresses and telephone numbers.

56.     Defendants acted in the manner described herein so as to maximize their profits while minimizing their labor costs.

57.     Every hour that each Plaintiff worked was for Defendants' benefit.

58.     As an inducement for the Plaintiffs to continue to work for the Plaintiffs, Defendants entered into a contract with the Plaintiffs to pay them a sum certain for the rest of their lives.

59.     Specifically, on or about August 27, 2017, the Plaintiffs and Sirulnick signed an agreement which, required the Plaintiffs to continue to work for the Defendants until December 31, 2019. The Agreement required the Defendants to pay each of the Plaintiffs $12,500.00 per year after their retirement for life (the "Agreement"). A copy of the Agreement is appended as Exhibit "1".

60.     The Agreement further provided that if either Sirulnick or Jill Sirulnick predeceased either of the Plaintiffs, the Plaintiffs would be entitled to three times the annual payment within 60 days.

61.     In August of 2019, Plaintiff Adelma was attacked by the family dog at the Estate.

62.     As a result of the dog attack, Plaintiff Adelma told Sirulnick that she was afraid of the dog and did not want to work around the dog.

63.     Sirulnick told her that if she was not comfortable working with the dog around, that she would not have to keep working at the Estate.

64.     Plaintiff Adelma asked Sirulnick if he would still honor the Agreement if she left her employment at the Estate, even though it was before the end of time she would normally have worked in the year 2019.

65.     In August of 2019 after the dog attack, Sirulnick said that if Plaintiffs left their employment early that year, that he would still honor the Agreement because he had made the promise, and because Plaintiffs were only leaving because Plaintiff Adelma was only leaving because of the dog attack, and would otherwise have stayed.

66.     The fact that Sirulnick would honor the August 27, 2018 Agreement notwithstanding Plaintiffs' early departure was confirmed in writing by Sirulnick's secretary on  August 19, 2019.

67.     In reliance upon Sirulnick's verbal promise to honor the Agreement notwithstanding Plaintiffs' early departure from their employment, and in reliance upon Sirulnick's secretary's e-mail to that effect on August 19, 2019, Plaintiffs left their employment with Defendants on September 1, 2019.

68.     The Defendants made one installment payment, in the amount of $6,250 to each Plaintiff, pursuant to the Agreement on December 1, 2019.

69.     The Defendants anticipatorily breached the contract in writing, refusing to make any further payments, as manifested in a writing signed by Sirulnick dated June 10, 2020.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime under the FLSA*

70.     Plaintiffs hereby incorporate all the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

71.     Defendants were required to directly pay each of the Plaintiffs an overtime premium of one and one-half times the Plaintiff's regular rate of pay for all hours worked over forty (40) in a given workweek.

72.     As described above, Defendants are employers within the meaning of the FLSA, and each Plaintiff is their employee within the meaning of the FLSA.

73.     As also described above, each Plaintiff worked in excess of forty (40) hours per week, yet Defendants failed to compensate either Plaintiff in accordance with the FLSA's overtime provisions.

74.     The Defendants willfully violated the FLSA.

75.     As such, each Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty (40) at the rate of one and one-half times her respective standard rate of pay.

76.     Each Plaintiff is also entitled to liquidated damages and attorneys' fees for the Defendants' violation of the FLSA's overtime provisions.

77.     All of the foregoing constituted willful and repeated violations of the Fair Labor Standards Act, so the applicable statute of limitations is three years pursuant to 29 U.S.C. § 255(a).

### *SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS*
*Unpaid Overtime under the NYLL*

78.     Plaintiffs hereby incorporate all the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

79.     Defendants were required to directly pay each of the Plaintiffs an overtime premium of one and one-half times the Plaintiff's regular rate of pay for all hours worked over forty (40) in any given workweek.

80.     As described above, Defendants are employers within the meaning of the NYLL, and each Plaintiff is an employee within the meaning of the NYLL.

81.     As also described above, each Plaintiff worked in excess of forty (40) hours per week, yet Defendants failed to compensate each Plaintiff in accordance with the NYLL's overtime provisions.

82.     Due to Defendants' violations of the New York Labor Law, each Plaintiff is entitled to recover from Defendants her unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### **THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Wage Notices in Violation of the NYLL*

83.     Plaintiffs hereby incorporate all the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

84.     The NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

85.     At all times herein pertinent, each Defendant was employer within the meaning of the NYLL and the NYCCRR, and each Plaintiff was an employee within the meaning of the NYLL and the NYCCRR.

86.     Defendants willfully failed to provide Plaintiffs with wage notices containing the criteria enumerated under the NYLL.

87.     Prior to February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to each Plaintiff in the amount of $50 for each workweek after the violations initially occurred, up to a statutory cap of $2,500.

88.     On or after February 27, 2015, pursuant to NYLL § 198(1-b), Defendants are liable to each Plaintiff in the amount of $50 for each workday after the violations initially occurred, up to a statutory cap of $5,000.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

89.     Plaintiffs hereby incorporate all the preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

90.     NYLL § 195(3) requires employers to furnish all employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to employees.

91.     As described above, the Defendants willfully failed to furnish either Plaintiff with accurate wage statements containing the criteria required under the NYLL.

92.     Prior to February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to each Plaintiff for each workweek after the violation occurred, up to the statutory cap of $2,500.

93.     On or after February 27, 2015, pursuant to NYLL § 198(1-d), Defendants are liable to each Plaintiff in the amount of $250 for each workday after the violation occurred, up to a statutory cap of $5,000.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Breach of Contract*

94.     The Plaintiffs hereby incorporate all preceding paragraphs of this complaint with the same force and effect as if fully set forth at length.

95.     The written contact concerning the promise to pay a sum certain constitute a meeting of the minds and a contract which was signed by the Parties.

96.     As Plaintiffs continued to work for the Defendants, a valid binding contract was created between the parties pursuant to the substantive law of contract of the State of New York.

97.     Plaintiffs have complied with all conditions precedent and all of their obligations under the Agreement.

98.     Plaintiffs alternatively allege that any non-compliance required on their part was excused by the Defendants, and that this was consented to in writing by them or on their behalf.

99.     Plaintiffs alternatively allege that the Agreement was verbally modified, confirmed in writing by the party to be charged, and ratified by partial performance, as well as by the intent of the parties to the Agreement as demonstrated by their subsequent conduct.

100.    After making the first payment under the said contract, Defendants anticipatorily breached the contract in writing, refusing to make any further payments, as manifested in a writing signed by Sirulnick dated June 10, 2020.

101.    By virtue of the foregoing, the Plaintiffs are entitled to payment in the amount of $12,500 each for life for so long as Sanford and Jill Sirulnick are alive, and if either Sanford Sirulnick or Jill Sirulnick predecease either Plaintiff, the Plaintiffs shall be entitled to the sum of $75,000 within 60 days of such death.

## DEMAND FOR A JURY TRIAL

102.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury in this action with respect to all issues so justiciable.

## PRAYER FOR RELIEF

 **WHEREFORE**, Plaintiffs, and each of them, demand judgment against the Defendants, and each of them, as follows:

a.      All damages that Plaintiff has sustained as a result of the Defendants' conduct, including all unpaid wages and any shortfall between wages paid and those due under the law that Plaintiff would have received but for the Defendants' unlawful payment practices, together with all sums lawfully due by virtue of the record-keeping violations;

b.      Liquidated damages and any other statutory penalties as recoverable under the FLSA and NYLL;

c.      Awarding Plaintiffs their costs and disbursements incurred regarding this action, including reasonable attorneys' fees, expert witness fees, and other costs;

d.      Pre-judgment and post-judgment interest, as provided by law;

e.      The present value of the contract which is appended to this Complaint as Exhibit "1", which shall be determined by actuarial calculation; and

f.      Granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated:  New York, New York
          June 24, 2020

                                        Respectfully submitted,
                                        LAW OFFICES OF WILLIAM CAFARO

_____
William Cafaro (WC 2730)
*Attorneys for Plaintiff*
108 West 39th Street, Suite 602
New York, New York 10018
(212) 583-7400
bcafaro@cafaroesq.com